**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(ALEXANDRIA DIVISION)**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GALLAGHER ASSOCIATES, LLC, | ) | |
| | ) | Case No. 26-12005 |
| Debtor. | ) | |
| | ) | |

**MOTION OF NIH FEDERAL CREDIT UNION (I) TO PROHIBIT DEBTOR'S USE OF CASH COLLATERAL AND (II) FOR ADEQUATE PROTECTION**

NIH Federal Credit Union ("NIH" or "Lender"), a substantial secured creditor of Gallagher Associates, LLC (the "Debtor"), by its undersigned counsel, moves (i) to prohibit the Debtor's use of cash collateral and (ii) for adequate protection, and in support thereof, states:

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157.

2. The statutory bases for the relief sought in this application are Sections 361 and 363(a), (c) and (e) of Title 11 of the United States Code (the "Bankruptcy Code").[1]

## INTRODUCTION

3. The Debtor and its managing member, Mary Ellen Gallagher, have and, upon information and belief, are continuing to improperly collect and use Rents (as defined herein), as well as the "Cash Collateral" (as defined herein), without NIH's permission and in violation of 11 U.S.C. § 363(c)(2).

4. Following the Petition Date (as defined herein), on August 21, 2026, NIH

[1] All statutory references are to Title 11 of the United States Code, unless otherwise noted.

provided notice (the "Cash Collateral Notice") to Debtor's counsel which provides that, inter alia, the Debtor must segregate and account for Cash Collateral and NIH does not consent to the Debtor's use of Cash Collateral. A copy of the Cash Collateral Notice is attached as **Exhibit A**. Despite demand from undersigned counsel, the Debtor failed to respond, refuses to segregate and provide an accounting of the Cash Collateral, and continues to use Cash Collateral without authorization.

5. For these reasons, and as more fully set forth herein, the Court should (i) immediately enjoin the Debtor from using the Cash Collateral, (ii) direct the Debtor to segregate and account for Cash Collateral in its possession and which has come into its possession since the Petition Date, and (iii) require the Debtor to provide adequate protection to NIH for its interest in the Cash Collateral.

## BACKGROUND

6. On the morning of August 19, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") to delay and hinder NIH's enforcement efforts, including a foreclosure sale scheduled for the afternoon of that same date (the "Foreclosure Sale") of certain property owned by the Debtor commonly known Condominium Unit No. 301 of the John Marshall Medical Dental Building located at 2501 North Glebe Road, Suite 301, Arlington, Virginia, 22207 and the rights appurtenant thereto as more fully described in the Deed of Trust (as defined herein) (the "Real Property").

7. Since the Petition Date, the Debtor has remained in possession of its property and continues to operate its business and manage its financial affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Code.

**The Financing Arrangement**

**A. The $560,000 Loan**

8. Prior to the Petition Date, NIH entered into a financing arrangement with the Debtor and Northern Virginia Internal Medicine and Pediatrics, P.C., a Virginia professional corporation (the "OpCo Borrower" and, together with the Debtor, the "Borrowers"), in the original Principal sum of $560,000.00 (the "$560,000 Loan).

9. The $560,000 Loan is evidenced by, among other things, (a) a Note, dated January 15, 2016, in the original principal sum of $560,000.00, executed by the Borrowers and made payable to NIH, as amended from time to time (the "$560,000 Loan Note"), and (b) a Loan Agreement dated January 15, 2016 (the "$560,000 Loan Agreement"). Copies of the $560,000 Loan Note and $560,000 Loan Agreement are attached hereto as **Exhibit B** and **Exhibit C,** respectively.

10. The indebtedness due and owing under the $560,000 Loan is secured by, among other things, a first-priority duly perfected deed of trust lien in, to and against the Real Property pursuant to the terms and conditions of, and as more fully described in, a Deed of Trust dated January 15, 2016, executed by the Debtor for the benefit of NIH and recorded with the Land Records of Arlington County, Virginia ("Land Records") as Document No. 20160100001111 (the "$560,000 Loan Deed of Trust"); (b) a duly perfected assignment of all of the Debtor's right, title and interest in and to, among other things, all existing and future recorded and unrecorded leases entered into on all or any part of the Real Property (collectively, the "Leases"), together with all rents, income, contract rights, issues, security deposits and profits arising from the Leases and renewals thereof or the use and occupation of the premises described in the Leases (collectively, the "Rents"), pursuant to the terms and conditions of, and as more fully

described in, an Assignment of Rents dated January 15, 2016, executed by the Debtor for the benefit of NIH and recorded in the Land Records as Document No. 20160100001112 (the "$560,000 Loan Assignment of Rents"); and (c) a duly perfected security interest in all tangible and intangible assets of, among others, the Debtor pursuant to a Commercial Security Agreement dated January 15, 2016 (the "$560,000 Loan Security Agreement") and a UCC Financing Statement filed with the Virginia Statement Corporation Commission as File No. 1601263848 (the "Financing Statement"). Copies of the $560,000 Loan Deed of Trust, $560,000 Loan Assignment of Rents, and $560,000 Loan Security Agreement, and Financing Statement are attached hereto as **Exhibit D**, **Exhibit E**, **Exhibit F**, and **Exhibit G**, respectively.

11. Under the $560,000 Loan Deed of Trust and the $560,000 Loan Assignment of Rents, the Debtor granted and conveyed to NIH the Debtor's right, title, and interest in all Leases, Rents, income, receipts, revenues, issues and profits generated by, arising or issuing from or out of the Real Property (collectively, the "Cash Collateral") and (ii) expressly provides that "Lender shall have the right at any time and even though no default shall have occurred under this Assignment, to collect and receive the Rents." Furthermore, the $560,000 Loan Assignment of Rents expressly states that "the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding." Likewise, under the $560,000 Loan Security Agreement, the Debtor granted NIH a security interest in, among other things, all accounts, instruments, deposit accounts, investment property, money, and other rights to payments, and all products and proceeds relating thereto, which also constitute Cash Collateral.

12. NIH perfected its interests in the Real Property, the Rents and the Cash Collateral by recording, with the Land Records, the $560,000 Loan Deed of Trust and the $560,000 Loan

Assignment of Rents, and by filing a financing statement with respect to the collateral granted in the $560,000 Loan Security Agreement. *See* Va. Code § 55.1-407 (under Virginia law, deeds of trust conveying real property or interests therein, including assignments of rents, take effect as to creditors and bona fide purchasers upon recordation); *see also* Va. Code § 8.9A-203 (a security interest attaches to collateral when value has been given, the debtor has rights in the collateral, and there exists a signed security agreement describing the collateral).

**B. The $108,575 Loan**

13. NIH also entered into a separate financing agreement with the OpCo Borrower in the original maximum principal amount of $108,575.00 (the "$108,575 Loan" and, collectively with the $560,000 Loan, the "Loans").

14. The $108,575 Loan is evidenced by, among other things, a Promissory Note dated January 31, 2023, as amended by (i) an Allonge to Promissory Note and Omnibus Modification of Loan Documents dated April 24, 2024, (ii) a Second Allonge to Promissory Note and Omnibus Modification of Loan Documents dated March 31, 2025, and (iii) a Third Allonge to Promissory Note and Omnibus Modification of Loan Documents dated May 1st, 2025 (as amended, the "$108,575 Loan Note"), and a Credit Agreement dated August 7, 2017 (the "$108,575 Loan Credit Agreement"). Copies of the $108,575 Loan Note and $108,575 Loan Credit Agreement are attached hereto as **Exhibit H** and **Exhibit I,** respectively.

15. The Debtor guaranteed the $108,575 Loan pursuant to a Guaranty Agreement dated April 24, 2024 (the "Guaranty"). A copy of the Guaranty is attached hereto as **Exhibit J**.

16. The indebtedness due and owing under the $108,575 Loan is secured by, among other things, a duly perfected lien in, to and against the Real Property and assignment of the Rents pursuant to the terms and conditions of, and as more fully described in, a Deed of Trust,

Assignment of Leases and Rents, Security Agreement and Fixture Filing dated April 24, 2024, executed by the Debtor for the benefit of NIH and recorded in the Land Records as Instrument No. 20240100004982 (the "$108,575 Loan Deed of Trust"). A copy of the $108,575 Deed of Trust is attached hereto as **Exhibit K**.

17. The $560,000 Loan Note, the $560,000 Loan Agreement, the $560,000 Loan Deed of Trust, the $560,000 Loan Assignment of Rents, the $560,000 Loan Security Agreement, the $108,575 Loan Note, the $108,575 Loan Credit Agreement, Guaranty, the $108,575 Loan Deed of Trust, and all other documents executed in connection therewith, each as subsequently amended, restated and modified from time to time, are collectively referred to herein as the "Loan Documents".

18. The $560,000 Loan Deed of Trust, the $560,000 Loan Assignment of Rents, the $560,000 Loan Security Agreement, the Financing Statement, and the $108,575 Loan Deed of Trust, provide NIH with a lien and security interest against the Cash Collateral.

**The Defaults and Chapter 11 Bankruptcy**

19. Both the $560,000 Loan and the $108,575 Loan matured on May 1, 2026. The Borrowers failed to repay the Loans at maturity.

20. On June 10, 2026, NIH sent the Debtor, among others, their $560,000 Loan Notice of Defaults and Demand for Payment in Full (the "$560,000 Loan Default Notice"), and their $108,575 Loan Notice of Defaults and Demand for Payment in Full (the "$108,575 Loan Default Notice", and together with the $560,000 Loan Default Notice the "Loan Default Notices"). The Loan Default Notices informed the Debtor, among others, that they are in default on both of the loans. Copies of the $560,000 Loan Default Notice and $108,575 Loan Default Notice are attached hereto as **Exhibit L** and **Exhibit M,** respectively.

21. Pursuant to the $560,000 Loan Deed of Trust, upon default, NIH has the right to take possession of the Real Property and to collect Rents without notice. Similarly, pursuant to the $108,575 Loan Deed of Trust, upon default, NIH has the right to collect the Rents. Despite the Default Notices, the Borrowers failed to satisfy the Loans or turn over Rents to NIH.

22. On the Petition Date, the Debtor filed its bare-bones petition under Chapter 11 of the Bankruptcy Code, to delay and hinder NIH's enforcement efforts with respect to the Real Property, including the Foreclosure Sale scheduled for that same date. Numerous deficiency notices have been issued with respect to the Debtor's filing. As of the date of the filing of this Motion, the Debtor has not filed its Schedules. In addition to NIH, the Debtor's matrix only includes the condominium association, the taxing authority, and Verna & Associates.

**The Commercial Lease(s) and Cash Collateral from the Property**

23. Pursuant to that certain Lease Agreement dated February 22, 2015, from the Debtor (as landlord) to the OpCo Borrower (as tenant) (the "Lease"), the OpCo Borrower leases the Real Property from the Debtor for its medical practice, for minimum guaranteed rents of $4,930.00 per month.[2] A copy of the Lease is attached hereto as **Exhibit N**.

## THE BASIS FOR RELIEF AND THE RELIEF REQUESTED

24. Pursuant to Section 363(a), cash collateral means "cash, . . . or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." *See also* Section 552(b) (security interest in bankruptcy extends to post-petition rents).

[2] Under the Lease, the OpCo Borrower is also responsible for taxes, utilities, and insurance.

25. Thus, the Cash Collateral, including any Rents generated from the Real Property and any other income arising from the Debtor's ownership or possession of the Real Property, constitute cash collateral under Section 363(a). *See, e.g., In re Fairview-Takoma Ltd. P'ship,* 206 B.R. 792 (Bankr. D. Md. 1997) (finding that under Section 552(b)(2), rents are cash collateral if the lender has a security interest in the rents).

26. Pursuant to 11 U.S.C. §363(c)(2), "the Trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless– (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

27. The Debtor has not sought permission to use the Cash Collateral. Moreover, NIH does not consent to the Debtor's use of the Cash Collateral.

28. Pursuant to 11 U.S.C. § 363(c)(4), "…the Trustee shall segregate and account for any cash collateral in the trustee's possession, custody or control."

29. Pursuant to 11 U.S.C. § 363(e), the Court "on request of an entity that has an interest in property used ... or proposed to be used ... shall prohibit or condition such use ... as is necessary to provide adequate assurance of such interest." *In re Atrium Development Co.*, 159 B.R. 464 (Bankr.E.D.Va. 1993) (Only means by which Chapter 11 debtor would be permitted to use its cash collateral, consisting of rents from debtor's office, would be with bankruptcy court's authorization under Bankruptcy Code section requiring a finding of adequate protection).

30. The Debtor is continuing to collect and use Cash Collateral. At present, it is unclear how the Debtor is using Cash Collateral, and whether the Debtor is properly segregating the Cash Collateral as required. The Debtor is not using the Cash Collateral to make payments to NIH as required under the Loan Documents. Thus, the Debtor has not provided adequate

protection for the use of the Cash Collateral. The Debtor should be prohibited from using the Cash Collateral until it can provide NIH with adequate protection of its interest in the Cash Collateral.

31. NIH reserves the right to seek relief from the automatic stay of 11 U.S.C. § 362 by way of separate motion to allow NIH to enforce its rights under the Loan Documents and applicable law.

32. NIH further reserves the right to seek additional adequate protection from the Debtor's collection and use of alternative forms of cash collateral.

WHEREFORE, NIH respectfully requests the following relief:

A. That the Debtor be enjoined from using the Cash Collateral;

B. That the Debtor be directed to segregate and account for Cash Collateral in its possession and which has come into its possession since the Petition Date;

C. That the Debtor provides adequate protection to NIH for its interest in the Cash Collateral; and

D. That NIH be granted such other and further rights as are just and equitable.

Dated: August 31, 2026

/s/ Scott W. Foley
Scott W. Foley, Bar No. 466848
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Telephone: (410) 385-4234
Email: swf@shapirosher.com
*Attorneys for NIH Federal Credit Union*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 31st day of August, 2026, a copy of the foregoing was served on the parties listed below via first-class mail.

Gallagher Associates, LLC
2501 North Glebe Road, Suite 301
Arlington, Virginia 22207

Office of the United States Trustee
115 S. Union Street, Suite 210
Alexandria, VA 22314

Cathleen A. Mullen, Esq.
Mullen Law PLLC
5908 4th St N
Arlington, Virginia 22203

/s/ Scott W. Foley
Scott W. Foley