# *Exhibit N*

# LEASE AGREEMENT

1. **PARTIES.**

This Lease Agreement (this "Lease") is made this 22 day of February, 2015, by and between **GALLAGHER ASSOCIATES, LLC**, a Virginia limited liability company ("Landlord"), and **NORTHERN VIRGINIA INTERNAL MEDICINE & PEDIATRICS, PC**, a Virginia professional corporation ("Tenant").

**WITNESSETH:**

2. **PREMISES.**

Landlord leases to Tenant and Tenant leases from Landlord, that certain condominium unit known as Suite 301 (the "Premises) located in the building at 2501 North Glebe Road, Arlington, Virginia 22207 (such building and the related land parcel, being hereinafter referred to as, the "Building"). The Premises (i) is deemed to include all personal property of Landlord located in the unit, if any, (ii) is part of the John Marshall Medical Building Condominium Association (the "Condo Association") and (iii) is subject to the rules and regulations of the Condo Association and the terms and conditions of all documents governing the Condo Association.

3. **TERM and OPTIONS.**

The Lease Commencement Date shall be 22 February 2015 and the Lease Termination Date shall be 22 February 2020, unless sooner terminated as provided in this Lease. This is a term of approximately five (5) years (the "Original Term" or "Term").

This Lease shall automatically renew for five (5) successive periods of five (5) years each (individually, a "Renewal", together, the "Renewals") (i.e., a total of an additional 25 years), unless Tenant provides notice to Landlord prior to the commencement of a Renewal that the Lease shall expire at the end of the Original Term or at the end of the Renewal then in effect, as the case may be. All Renewals that occur shall be deemed included in the definition of "Term" under this Lease.

4. **USE.**

Tenant shall use the Premises for a general office use (which is deemed to permit a medical office use), and no other use without Landlord's consent, which shall not be unreasonably withheld, conditioned and/or delayed.

## 5. POSSESSION.

Tenant hereby acknowledges that Tenant is already in possession of the Premises and has been occupying the Premises with the consent of Landlord. Tenant accepted (and shall continue to accept) the Premises in its "As-Is" physical condition and subject to all applicable zoning, municipal, county, state and federal laws, ordinances and regulations governing and regulating the use of the Premises. Landlord shall have no responsibilities with respect to the condition of the Premises and/or the equipment serving the Premises and the repair and maintenance of all the foregoing items shall be Tenant's responsibility. Tenant shall be responsible at its sole risk and expense for obtaining any required construction, occupancy or other permits. Landlord shall have no obligation to do any work in the Premises and Landlord shall bear no cost or expense whatsoever in connection with the modification, alteration or repair of the Premises.

## 6. MINIMUM GUARANTEED RENT; CONDO FEE.

(a) In consideration of the demise and leasing of the Premises, Tenant covenants and agrees to pay Landlord commencing on the Lease Commencement Date, Minimum Guaranteed Rent as set forth below, with no offsets, deductions or abatement, to be paid on or before the first day of each calendar month, in advance, at the address set forth in Paragraph 29 for Landlord or at such other place as shall be designated by Landlord.

| DATE | MINIMUM GUARANTEED RENT |
|---|---|
| Original Term | $4,650.00 per month |
| Renewal #1 | $4,790.00 per month |
| Renewal #2 | $4,930.00 per month |
| Renewal #3 | $5,080.00 per month |
| Renewal #4 | $5,230.00 per month |
| Renewal #5 | $5,400.00 per month |

(b) Landlord shall be responsible, at Landlord's sole cost and expense, without reimbursement from Tenant, for the prompt payment of all condominium fees and other fees for the Premises due to the Condo Association and for the prompt payment of all other fees for the Premises that are not the responsibility of Tenant under this Lease, except for any fees that relate directly to Tenant's business in the Premises.

## 7. REAL ESTATE TAXES; TRASH REMOVAL.

Tenant shall be responsible for the timely payment directly to the taxing authority of all real estate taxes for the Premises, and, if applicable, all charges relating to trash removal for the Premises.

## 8. CHARGE TO TENANT FOR LATE PAYMENT.

Monthly payments of Minimum Guaranteed Rent are due and payable on the first day of each calendar month of the Term. In the event a payment is not received by Landlord on or before the 15th day of the month in which said payment is due, then Tenant agrees to pay to Landlord, upon demand, a late charge fee of one hundred dollars ($100.00) for each such late payment,.

## 9. UTILITIES.

Tenant shall, at its own cost and expense, pay promptly all charges when due for water, telephone, electricity, heat, gas, sewer charges, and any other utility charges rendered or furnished to the Premises or incurred by Tenant in its use and occupancy thereof.

## 10. FIRE AND CASUALTY INSURANCE.

Tenant shall be responsible for procuring (i) fire and extended coverage insurance for the improvements in the Premises and (ii) fire and extended coverage insurance on Tenant's inventory, furniture, fixtures and equipment, in amounts equal to at least the total replacement value of such improvements, inventory, furniture, fixtures and equipment. All such insurance policies and insurance carriers shall be approved by Landlord (and Landlord's lender) and shall name Landlord and Landlord's lender as the "loss payee" (using the standard mortgage endorsement for Landlord's lender).

## 11. PUBLIC LIABILITY AND PROPERTY DAMAGE INSURANCE; OTHER INSURANCE.

Tenant shall keep in full force and effect during the Term, at Tenant's expense, a policy of comprehensive public liability insurance and property damage insurance with respect to the Premises and the business operated by Tenant, and/or any subtenant of Tenant in the Premises, which policy (and insurance carrier) shall be approved by Landlord, shall name Landlord, Landlord's lender and the Condo Association as additional insureds, and shall have limits of liability not less than one million dollars ($1,000,000) per occurrence and $2,000,000 in the aggregate. The policy shall cover losses, injuries, death and damage occurring in the Premises.

## 12. LIMITATION OF LANDLORD'S LIABILITY.

Except in the event of Landlord's negligence or willful misconduct or its failure to maintain, repair or replace as required under this Lease, Landlord shall not be liable for any loss, damage or injury to the person, business (or any loss of income therefrom), goods, wares, merchandise or other property of Tenant, Tenant's agents, subtenants or employees, ,

## 13. OPERATION OF PREMISES; HAZARDOUS SUBSTANCES.

Tenant shall not cause or permit the Premises to be used in any way which constitutes a violation of any law, ordinance or governmental regulation or order, or which is inconsistent with the use permitted in Paragraph 4 of this Lease, or which in any manner involves dangerous, hazardous or toxic substances, except if Tenant operates a medical office in the Premises, Tenant shall be

permitted to maintain substances utilized in the normal course of its business provided Tenant properly disposes of all needles and similar items and any dangerous or hazardous substances.

## 14. DAMAGE TO PREMISES OR IMPROVEMENTS.

Tenant will repair promptly at its own expense any damage to the Premises or to any improvements or installations within or without the Building, caused by bringing into the Premises any property for Tenant's use, or by the installation or removal of such property, or caused by any act or failure to act, negligent or otherwise, by Tenant or Tenant's agents, subtenants, employees, invitees, customers or service contractors; and in default of such repairs by Tenant, Landlord may make the same and Tenant agrees to pay the cost thereof to Landlord immediately upon receipt of Landlord's demand therefor.

## 15. MAINTENANCE AND REPAIRS.

Tenant, at its sole cost and expense, shall at all times maintain the Premises, its equipment, and fixtures in good condition and repair, and also in a clean, orderly, sanitary and safe condition, and also in accordance with all directions, rules and regulations of the health officer, fire marshal, building inspector or other proper officers of the governmental agencies having jurisdiction. Notwithstanding the foregoing, Landlord shall be responsible, at Landlord's sole cost and expense, for the maintenance and repair of the heating, air conditioning, and ventilation equipment and system, the electrical equipment and systems and the plumbing equipment and systems so that all are in good working condition at all times, and shall replace all or any portion of such equipment and systems which cannot be fully repaired, regardless of whether the benefit of such replacement extends beyond the Term. Tenant, at its cost and expense, shall comply with all requirements of law, ordinances and otherwise, affecting the Premises and shall permit no waste, damage, or injury to said Premises. Tenant shall at its cost and expense replace any broken or cracked doors and plate or window glass (including any glass with holes) in the Premises with materials of like kind and quality. All maintenance, repairs and replacements shall be accomplished in a good and workmanlike manner.

## 16. ALTERATIONS.

Tenant shall not make any alterations, replacements, additions or improvements (including, without limitation, the installation of any antennas or aerials) on or to the Premises without Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned and/or delayed. Tenant's request for Landlord's consent shall be accompanied by plans and specifications, satisfactory to Landlord, covering all work to be performed. All alterations, replacements, additions or improvements will be accomplished at Tenant's sole cost and expense, in a good and workmanlike manner and in conformity with all laws and regulations.

## 17. ACCESS.

Landlord or Landlord's agents, may enter the Premises during business hours upon at least 48 hours prior written notice to Tenant to show it to potential buyers, lenders or tenants.

## 18. OCCUPANCY.

Tenant will endeavor, but shall not be required, to continuously conduct from the Premises the business stated herein and shall endeavor, but shall not be required, to keep the Premises open for business during the normal business hours of each and every business day as is customary for a business of like character in the general area of the Building.

## 19. DEFAULT.

If (i) any payment of Minimum Guaranteed Rent or other sums due under this Lease shall be and remain unpaid for more than thirty (30) days after notice that the same is due and payable, or (ii) Tenant shall violate or fail to perform any of the other covenants, agreements, stipulations or conditions set forth in this Lease, and such violation or failure is not cured within thirty (30) days after notice of the same, Landlord shall have the right, in its sole discretion, to do the following: (a) cure the default or violation for Tenant and 110% of all costs incurred by Landlord shall be deemed additional rent hereunder and immediately due from Tenant, (b) file an unlawful detainer (or similar action) with the courts of Arlington County (and thereafter evict Tenant from the Premises if permitted by the courts of Arlington County, it being understood that Landlord may deem the Lease terminated upon such event), or (c) maintain Tenant's right to possession, in which case this Lease shall continue in full force and effect, and Landlord shall be entitled to enforce all of Landlord's rights and remedies under the Lease (it being understood that all such remedies shall be enforced through the Arlington County courts); and/or (d) pursue any other remedy now or hereafter available to Landlord under the laws or judicial decisions of the Commonwealth of Virginia (it being understood that all such remedies shall be enforced through the Arlington County courts).

## 20. CASUALTY TO PREMISES.

If the permanent improvements of the Premises shall be damaged or destroyed by fire, or other casualty, and such improvements are insured by Landlord and/or the Condo Association, then Landlord (in conjunction with the Condo Association, if applicable) shall immediately cause such damage to be repaired and the Minimum Guaranteed Rent shall abate in proportion to the amount of damage to the Premises until such damage is repaired; provided, however, if Tenant is unable to reasonably conduct business in the Premises, then Tenant shall have the right to terminate this Lease by providing Landlord with written notice thereof within sixty (60) days after the casualty, in which event this Lease and the tenancy created hereby shall cease as of the date of such damage or destruction and the Minimum Guaranteed and other payments due herein shall be adjusted as of such termination date. If the permanent improvements of the Premises shall be damaged or destroyed by fire, or other casualty, and such improvements are required to be insured by Tenant pursuant to this Lease, then, Tenant shall have the option to either (a) cause such damage to be repaired, in which event this Lease shall remain in full force and effect except that Tenant shall not be obligated to pay Minimum Guaranteed Rent until said Premises are restored (provided Tenant is using good faith efforts to restore the Premises); or (b) if Tenant is unable to reasonably conduct business in the Premises, terminate this Lease by providing Landlord with written notice thereof within sixty (60) days after the casualty, in which event this Lease and the tenancy hereby

created shall cease as of the date of said damage or destruction; the Minimum Guaranteed Rent and other payments due herein shall be adjusted as of such termination date and Tenant shall assign the insurance proceeds for the permanent improvements (but not any other improvements and/or Tenant's furniture, fixtures and equipment) to Landlord.

**21. TERMINATION.**

Upon the expiration or earlier termination of this Lease, Tenant will quit and surrender said Premises and Landlord's equipment and fixtures in at least as good a state and condition as they were when the Premises were first occupied by Tenant, ordinary wear and tear excepted, except Tenant shall have no responsibility with regard to the heating, venting and air conditioning, electrical and/or plumbing equipment or systems. All alterations, erections or improvements on said Premises at the expiration or earlier termination of this Lease, except only such furniture, fixtures, and equipment which are removable by Tenant pursuant to this Lease, shall become a part of the Premises and shall remain upon and be surrendered with said Premises as a part thereof at the expiration or earlier termination of this Lease, unless Landlord notifies Tenant that said alterations, erections or improvements should be removed by Tenant and/or unless Tenant desires to remove such items and repairs all damage relating thereto. Tenant shall return to Landlord all keys for any locks to or in the Premises immediately upon surrender of the Premises.

**22. TENANT'S FIXTURES.**

Prior to termination of the Lease, Tenant shall repair, at Tenant's expense, any damage to the Premises caused by the removal of Tenant's furniture, fixtures and equipment. If Tenant fails to make such repairs, Landlord has the right to repair the damage upon ten (10) days' notice to Tenant and Tenant agrees to promptly pay Landlord the cost incurred for such repairs.

**23. HOLDING OVER.**

In the event the Tenant remains in possession of the Premises upon the expiration or earlier termination of this Lease, and Landlord thereafter accepts rent from Tenant, Tenant shall be deemed occupying the Premises as a Tenant from month to month, subject to all of the conditions, provisions and obligations of this Lease insofar as the same are applicable to a month to month tenancy. Minimum Guaranteed Rent during any such hold over period shall be one hundred and ten percent (110%) of the Minimum Guaranteed Rent in effect during the last full month of the Lease preceding expiration or earlier termination.

**24. SUBORDINATION.**

Tenant agrees that this Lease is and shall be subject and subordinate to any mortgages or trust deeds that may now exist or hereafter be placed upon the Premises and to any and all advances to be made thereunder, and to the interest thereon, and all renewals, replacements, and extensions thereof (the "Mortgages"), and Tenant shall attorn to any purchaser of the Premises in a foreclosure or sale in lieu of foreclosure, provided Tenant's right to quiet possession of the Premises is not disturbed.

## 25. ASSIGNMENT AND SUBLEASE.

Tenant shall be permitted to assign this Lease and sublet up to forty-nine percent (49%) of the gross leasable area of the Premises. Tenant shall provide Landlord with notice of any assignment or sublet. In the event of a sublease of the Premises, (i) such sublease shall be subject and subordinate to the Mortgages and this Lease and (ii) the sublessee shall be responsible for adhering to all of the terms and conditions set forth in this Lease.

## 26. INDEMNITY.

Tenant shall indemnify Landlord against and hold Landlord harmless from any and all cost, claims or liability arising from: (a) Tenant's use of the Premises; (b) the conduct of Tenant's business or anything else done or permitted by Tenant to be done in or about the Building; (c) any breach or default in the performance of Tenant's obligations under this Lease; and (d) other acts or omissions of Tenant, its subtenants, employees and/or agents. Tenant shall defend Landlord against any such cost, claim or liability at Tenant's expense with counsel reasonably acceptable to Landlord. Landlord shall indemnify Tenant against and hold Tenant harmless from any and all cost, claims or liability arising from the conduct of Landlord's business or anything else done or permitted by Landlord to be done in or about the Building; (b) any breach or default in the performance of Landlord's obligations under this Lease; and (c) other acts or omissions of Landlord, its subtenants, employees or agents. Landlord shall defend Tenant against any such cost, claim or liability at Landlord's expense with counsel reasonably acceptable to Tenant.

## 27. ESTOPPEL CERTIFICATES.

Upon a party's written request, the other party shall execute, acknowledge and deliver to the requesting party a written statement certifying: (i) that none of the terms or provisions of this Lease have been changed or waived (or if they have been changed or waived, stating how they have been changed or waived); (ii) that this Lease is in full force and effect and has not been canceled or terminated; (iii) that the Lease has not been assigned by Tenant or Landlord (as the case may be) and for Tenant that the Premises have not been subleased (or if an assignment or sublease has occurred, stating the name of the assignee or sublessee and the terms and duration of the sublease or assignment); (iv) that the other party is not in default under this Lease (or, if such party is claimed to be in default, stating why); and (v) such other items as the party reasonably requests. The statement shall be delivered to the requesting party within ten (10) days after request thereof.

## 28. MISCELLANEOUS.

It is understood and agreed that this Lease contains the entire agreement between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties hereto. The conditions and agreements contained herein are binding on, and may be legally enforced by the parties hereto, their heirs, executors, administrators, successors and assigns, subject to the provisions hereof regarding assignment of this Lease or subletting of the Premises by Tenant. If any terms or provisions of this Lease or the application thereof shall to any extent be invalid or unenforceable, the remainder of this Lease, or the application of such terms or

provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and enforced to the fullest extent permitted by law. No provision of this Lease shall be deemed to have been waived unless such waiver shall be in writing signed by Landlord or Tenant, as the case may be. This Lease shall be governed and construed under the laws of the Commonwealth of Virginia.

**29. ADDRESS AND NOTICES.**

All notices required under this Lease shall be in writing and deemed to be effective upon delivery if delivered personally or if sent by registered or certified mail or by Federal Express (or a comparable overnight carrier) to the parties at the addresses set forth below. Either party may change its notice address by notice sent to the other party.

LANDLORD:
Gallagher Associates, LLC
2501 North Glebe Road, Suite 301
Arlington, Virginia 22207

TENANT:
Northern Virginia Internal Medicine & Pediatrics, PC
2501 North Glebe Road, Suite 301
Arlington, Virginia 22207

Until further notification in writing by Landlord to Tenant, all payments to Landlord called for herein shall be made payable to "Gallagher & Associates, LLC" and sent to Landlord at the address above.

**30. ATTORNEYS' FEES.**

In the event of any action or proceeding brought by either party against the other under this Lease, the substantially prevailing party shall be entitled to recover for the fees of its attorney in such action or proceeding, including costs of appeal, if any, in such amount as the court may adjudge reasonable.

**31. LANDLORD'S LIABILITY.**

Landlord shall be in default under this Lease if Landlord fails to perform any of its obligations hereunder without cure for a period of thirty (30) days after written notice thereof is provided to Landlord and to any holder of a mortgage or deed of trust covering the Premises; provided, however, that if more than thirty (30) days are reasonably required to cure, Landlord shall not be deemed in default if Landlord commences such cure within the thirty (30) day period and thereafter diligently prosecutes such cure to completion. If Landlord defaults under this Lease, Tenant shall have the option, in its sole and absolute discretion, to do the following: (a) terminate this Lease, (b) seek damages or (c) seek injunctive relief. In the event of any sale of the Premises by Landlord, Landlord shall be and is hereby entirely freed and relieved of all liability under any and all of its

covenants and obligations contained in or derived from this Lease arising out of any act, occurrence or omission occurring after the consummation of such sale; and the purchaser, at such sale or any subsequent sale of the Premises, shall be deemed, without any further agreement between the parties or their successors in interest or between the parties and any such purchaser, to have assumed and agreed to carry out all of the covenants and obligations of the Landlord under this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this Lease Agreement under their respective seals on the day and year first written above.

LANDLORD:

GALLAGHER ASSOCIATES, LLC

DocuSigned by:

By: Dr. Meg Gallagher [SEAL]
98D7714DB5384D2...
Name: Dr. Meg Gallagher
Title: President

TENANT:

NORTHERN VIRGINIA INTERNAL MEDICINE & PEDIATRICS, PC

DocuSigned by:

By: Dr. Meg Gallagher [SEAL]
98D7714DB5384D2...
Name: Dr. Meg Gallagher
Title: President

*11/25/2015 lease2015a*