**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **GALLAGHER ASSOCIATES, LLC** | ) | |
| | ) | Case No. 26-12005-BFK |
| Debtor. | ) | |
| | ) | |

**INTERIM STIPULATED CONSENT ORDER AUTHORIZING**
**<u>USE OF USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION</u>**

Upon consideration of the *Motion of NIH Federal Credit Union (I) to Prohibit Debtor's Use of Cash Collateral and (II) for Adequate Protection* (the "**Cash Collateral Motion**")[1] [ECF No. 17, August 31, 2026] filed by NIH Federal Credit Union ("**NIH**" or "**Lender**") and the Response [ECF No. 34] filed by Gallagher Associates, LLC (the "**Debtor**"), and the Lender and the Debtor having negotiated at arm's-length and in good faith with respect thereto resulting in the terms of the agreement set forth herein, and this Court finding that: (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M); and (iii) form and manner of notice of the Motion was sufficient under the circumstances and that no other or further notice is required; the Court having determined that the relief sought in this Interim Consent Order is in the best interests of the Debtor and its estate, creditors and other parties-in-interest; all objections to the entry of this Interim Consent Order, if any, having been withdrawn or overruled; and the Court having determined that good cause exists to enter this Interim Consent Order pursuant to 11 U.S.C. §§ 362(d), 363(c), and 363(e) and Fed. R. Bankr. P. 4001(a), (b) and (d), this Court makes the following findings and enters this Interim Consent Order, all as set forth below:

[1] Capitalized terms not defined herein shall have the meaning ascribed in the Cash Collateral Motion.

**WHEREAS, THE LENDER AND THE DEBTOR STIPULATE AND AGREE AS FOLLOWS**:

a. On August 19, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.[2] Since the Petition Date, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108.

b. The Debtor is a "single asset real estate" entity within the meaning of Section 101(51B). The Debtor is the owner of certain real property commonly known as Condominium Unit No. 301 of the John Marshall Medical Dental Building located at 2501 North Glebe Road, Suite 301, Arlington, Virginia, 22207 and the rights appurtenant thereto as more fully described in the Loan Documents (as defined herein) (the "**Real Property**").

c. The Lender is the Debtor's secured lender and the largest creditor. The Lender asserts perfected senior liens and security interests in the Real Property, the Leases (as hereinafter defined), the Rents (as hereinafter defined), and all Cash Collateral.

d. Prior to the Petition Date, NIH entered into a financing arrangement with the Debtor and Northern Virginia Internal Medicine and Pediatrics, P.C. (the "**OpCo Borrower**" and, together with the Debtor, the "**Borrowers**"), in the original principal sum of $560,000.00 (the **"$560,000 Loan**). The $560,000 Loan is evidenced by, among other things, (a) a Note, dated January 15, 2016, in the original principal sum of $560,000.00, executed by the Borrowers and made payable to NIH, as amended from time to time (the **"$560,000 Loan Note**"), and (b) a Loan Agreement dated January 15, 2016 (the "**$560,000 Loan Agreement**").

e. The indebtedness due and owing under the $560,000 Loan is secured by, among other things: (a) a first-priority duly perfected deed of trust lien in, to and against the Real Property

[2] All statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless otherwise noted.

pursuant to the terms and conditions of, and as more fully described in, a Deed of Trust dated January 15, 2016, executed by the Debtor for the benefit of NIH and recorded with the Land Records of Arlington County, Virginia ("**Land Records**") as Document No. 20160100001111 (the "**$560,000 Loan Deed of Trust**"); (b) a duly perfected assignment of all of the Debtor's right, title and interest in and to, among other things, all existing and future recorded and unrecorded leases entered into on all or any part of the Real Property (collectively, the "**Leases**"), together with all rents, income, contract rights, issues, security deposits and profits arising from the Leases and renewals thereof or the use and occupation of the premises described in the Leases (collectively, the "**Rents**"), pursuant to the terms and conditions of, and as more fully described in, an Assignment of Rents dated January 15, 2016, executed by the Debtor for the benefit of NIH and recorded in the Land Records as Document No. 20160100001112 (the "**$560,000 Loan Assignment of Rents**"); and (c) a duly perfected security interest in all tangible and intangible assets of, among others, the Debtor pursuant to a Commercial Security Agreement dated January 15, 2016 (the "**$560,000 Loan Security Agreement**") and a UCC Financing Statement filed with the Virginia Statement Corporation Commission as File No. 1601263848 (the "**Financing Statement**").

f. NIH also entered into a separate financing agreement with the OpCo Borrower in the original maximum principal amount of $108,575.00 (the "**$108,575 Loan**" and, collectively with the $560,000 Loan, the "**Loans**").

g. The $108,575 Loan is evidenced by, among other things, a Promissory Note dated January 31, 2023, as amended by (i) an Allonge to Promissory Note and Omnibus Modification of Loan Documents dated April 24, 2024, (ii) a Second Allonge to Promissory Note and Omnibus Modification of Loan Documents dated March 31, 2025, and (iii) a Third Allonge to Promissory

Note and Omnibus Modification of Loan Documents dated May 1st, 2025 (as amended, the "**$108,575 Loan Note**"), and a Credit Agreement dated August 7, 2017 (the "**$108,575 Loan Credit Agreement**"). The Debtor guaranteed the $108,575 Loan pursuant to a Guaranty Agreement dated April 24, 2024 (the "**Guaranty**").

h. The indebtedness due and owing under the $108,575 Loan is secured by, among other things, a duly perfected lien in, to and against the Real Property and assignment of the Rents pursuant to the terms and conditions of, and as more fully described in, a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated April 24, 2024, executed by the Debtor for the benefit of NIH and recorded in the Land Records as Instrument No. 20240100004982 (the "**$108,575 Loan Deed of Trust**").

i. NIH perfected its interests in the Real Property, the Rents, and the Cash Collateral by recording, with the Land Records, the $560,000 Loan Deed of Trust, the $560,000 Loan Assignment of Rents, and the $108,575 Loan Deed of Trust, and by filing the Financing Statement with respect to the collateral granted in the $560,000 Loan Security Agreement.

j. The $560,000 Loan Note, the $560,000 Loan Agreement, the $560,000 Loan Deed of Trust, the $560,000 Loan Assignment of Rents, the $560,000 Loan Security Agreement, the Financing Statement, the $108,575 Loan Note, the $108,575 Loan Credit Agreement, Guaranty, the $108,575 Loan Deed of Trust, and all other documents executed in connection therewith, each as subsequently amended, restated and modified from time to time, are collectively referred to herein as the "**Loan Documents**".

k. The Debtor acknowledges that NIH's liens and security interests are valid, binding, properly perfected, unavoidable, and enforceable against the Debtor's estate. By virtue of the Loan

Documents, NIH holds a first priority perfected lien and security interest against, among other things, the Real Property and the Rents.

l. NIH asserts that the total debt owed by the Debtor as of September 15, 2026, is $458,755.91 (consisting of principal of $437,464.39, interest of $19,787.77 and late fees of $1,503.75) as to the $560,000 Loan and $83,695.17 (consisting of principal of $81,864.98 and interest of $1,830.19) as to the $108,575 Loan, plus accrued legal fees and expenses, plus continuing interest, fees, and expenses provided for under the Loan Documents and applicable law. NIH will file a secured proof of claim by the deadline set by the Court. NIH reserves the right to assert all amounts due under the Loan Documents, including default rate interest, reasonable fees, costs, and charges.

m. On May 1, 2026, both the $560,000 Loan and the $108,575 Loan matured.

n. On June 10, 2026, NIH sent the Debtor the Loan Default Notices, informing the Debtor that it defaulted on the respective Loans and that NIH had the right to collect Rents. Despite demand, the Debtor did not turn over any Rents.

o. The Rents generated from the Real Property pre- and post-petition constitute "**Cash Collateral**" subject to 11 U.S.C. §§ 363 and 552(b). The Debtor requires use of the Cash Collateral to maintain, manage, and preserve the Real Property.

p. NIH consents to the Debtor's use of Cash Collateral only upon the terms and conditions set forth herein.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1. The Motion, as modified by the agreement of the Parties, is hereby GRANTED as set forth herein.

2. **Use of Cash Collateral**. The Debtor is authorized to use Cash Collateral, subject to the terms and conditions set forth herein, on an interim basis until December 31, 2026, to pay the following expenses on a current basis going forward: (i) Real Property taxes; (ii) Real Property insurance; (iii) Real Property condominium association fees; and (iv) U.S. Trustee fees. Payment of any other fees and expenses from the Cash Collateral shall require the express written consent of the Lender prior to payment. For the avoidance of doubt, the Debtor's authorization to use Cash Collateral under this Interim Consent Order shall expire on the earlier of (i) an "Event of Default" (as defined herein) or (ii) January 1, 2027, unless further extended by separate order of the Court.

3. **SARE Case**. The Court determines that the Debtor constitutes a "single asset real estate" entity as defined in Section 101(51B), and that this bankruptcy case and the Debtor are subject to the "single asset real estate" provisions of the Bankruptcy Code, including Section 362(d)(3).

4. **Adequate Protection Payments**. The Debtor shall make a monthly adequate protection payment of $4,425.00 in immediately available funds to the Lender on October 1, 2026, November 1, 2026, and December 1, 2026 (respectively, any such payment is a "**Monthly Adequate Protection Payment(s)**").

5. **Real Property Maintenance**. As more fully set forth in and without limiting the Debtor's obligations under the Loan Documents, the Debtor shall: (i) keep the Real Property in good condition and repair; (ii) promptly pay and discharge all taxes, assessments, and governmental charges or levies imposed on the Real Property on time; and (iii) procure and maintain all insurance coverages required by the Loan Documents, with the Lender named as a loss payee/additional insured on all such policies of insurance. Upon telephonic or written notice from the Lender, the Debtor shall provide the Lender with evidence of insurance coverage

including, without limitation, certified copies of the policies and required endorsements, invoices, and evidence of payment of same.

6. **Replacement Lien**. As additional adequate protection for the Debtor's use of Cash Collateral subject to NIH's perfected lien and security interest, NIH is granted a replacement lien pursuant to Section 361(2) of the Bankruptcy Code in all post-petition assets of the Debtor: (i) to the extent Cash Collateral is used by the Debtor and such use results in a diminution of the value of the Cash Collateral subject to NIH's perfected lien and security interest; and (ii) to the same nature, extent, validity, and priority in the Debtor's post-petition collateral and proceeds thereof as NIH held in the Debtor's pre-petition collateral. Such replacement liens are deemed automatically perfected.

7. **Event of Default**. If the Debtor fails to make any Monthly Adequate Protection Payment in a timely manner or otherwise fails to timely perform its obligations under this Interim Consent Order, and fails to cure said default(s) within five (5) business days of the date of written notice thereof to the Debtor (via overnight mail to Mary Ellen Gallagher, 2501 N Glebe Rd Suite 301, Arlington, VA 22207), Debtor's counsel (via email to dan@danpress.us), and the U.S. Trustee (via email to Kristen.S.Eustis@usdoj.gov),it shall be deemed an event of default under this Interim Consent Order (a "**Event of Default**").

8. Nothing contained herein shall be deemed or construed to: (a) limit NIH to the relief granted herein; (b) bar NIH from seeking other and further relief including, but not limited to, relief under Sections 362 or 507(b); (c) require NIH to make any loans or advances to the Debtor; or (d) constitute an admission by NIH that the provisions of this Interim Consent Order do or do not constitute adequate protection for purposes of any other motion or matter in the bankruptcy case.

9. This Interim Consent Order shall be effective immediately upon entry by the Court.

10. This Interim Consent Order shall be served on all creditors and parties requesting notice.

Date:_________________

_____________________________
United States Bankruptcy Judge

**<u>WE ASK FOR THIS</u>**:

/s/ Daniel M. Press
Daniel M. Press, VSB# 37123
LAW OFFICES OF DANIEL M. PRESS
201 Washington St.
Cumberland, MD 21502
(703) 725-7600

*Counsel for the Debtor and Debtor in Possession*

/s/ Scott W. Foley
Scott W. Foley, VSB# 466848
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
(410) 385-4234

*Counsel for NIH Federal Credit Union*